**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO. 2:21-cr-00018-LGW-BWC |
| REGAL HOSPITALITY SOLUTIONS, LLC, et al., | |
| Defendants. | |

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO DISQUALIFY THE
PROSECUTION TEAM FOR KNOWINGLY VIOLATING THE REGAL
DEFENDANTS' ATTORNEY-CLIENT PRIVILEGE**

Defendants Regal Hospitality Solutions, LLC ("Regal"), Karen Makaryan, Sargis Makaryan, Samvel Nikoghosyan, Artur Grigoryan, Armen Ayrapetyan, Fremie Balbastro, and Jason Hill (collectively, "the Regal Defendants") move this Court to dismiss the Indictment or, alternatively, disqualify the Prosecution Team for knowingly violating the Regal Defendants' attorney-client privileges.

I.   **BACKGROUND**

    A. **The Prosecution Team's Failure to Take Any Measures to Protect the Regal Defendants' Attorney-Client Privilege When Obtaining and Executing the Search Warrant**

In the Spring of 2017, the Government began investigating Regal Hospitality Solutions. *See* ECF No. 194, Exs. B–I. Regal was notified about the investigation when Department of State – Office of Inspector General ("DOS-OIG") Agents attempted to interview numerous Regal employees across the country. *See id.*, Ex. D. Additionally, on May 23, 2017, the Government obtained a subpoena for Regal's documents in the Southern District of Alabama. *Id.*, Ex. C. However, Regal, and many of its management-level employees, retained counsel. *See id.* Agent Julia Chalmers—the affiant for the eventual Search Warrant of the Regal Defendants' emails—had

1

*actual knowledge* that the Regal Defendants were represented by counsel. *See, e.g.*, *id.*, Ex. G (email from Agent Chalmers to colleagues in DOS-OIG with the name and contact information of an attorney representing three Regal employees). In fact, on June 28, 2017—approximately three months *before* seeking the Search Warrant—Agent Chalmers emailed Regal's counsel after receiving documents responsive to the subpoena and noted, "There are many attorneys involved in this case and I'm trying to track proper representation of parties because it appears we have some overlap occurring." ECF No. 225, Ex. C. Given the fact that many, if not most, of the subjects of her investigation were represented by counsel, Agent Chalmers created a spreadsheet to track the attorneys involved and the responses to subpoenas. *See* ECF No. 194, Ex. E.

Throughout the Summer of 2017, Regal continued producing employee files in response to the subpoena. *See id.* Attorney Nettles remained in communication with Agent Chalmers and mailed her two flash drives containing employee files on August 14, 2017. *See* ECF No. 225, Ex. E. After producing the employee records, things went quiet. The Regal Defendants later learned that, while Regal was engaging in an agreed-upon rolling production of documents, the Alabama-based Prosecution Team was working to prepare a Search Warrant application.

On September 26, 2017, in the Southern District of Alabama, Agent Chalmers submitted an application for a search warrant for *all* Regal email addresses. ECF No. 194, Ex. H. Agent Chalmers did not inform the Alabama Magistrate Judge that Regal and many of its employees were represented by counsel. *See* ECF No. 214 at 5. And the Affidavit and Search Warrant did not contain any protocols for handling privileged information. *See* ECF No. 194, Ex. H. Indeed, the Government acknowledges that Agent Chalmers took *no precautions* to plan for the privileged emails that were certain to result from the search warrant. *See id.* Nor did Agent Chalmers tailor the search warrant request towards individuals' email accounts that she believed she had probable

cause to search, instead seeking to search every email associated with every Regal email address. *See* ECF No. 194, Ex. H at 19.

Unsurprisingly, the Return included hundreds of thousands of emails, including many privileged communications. *See* ECF No. 214, Ex. 1 at 2 (stating that the Return included "481,929 data items being tagged as email, documents, and images); ECF No. 194, Ex. A (listing the Bates Numbers of nearly 500 privileged documents that the Regal Defendants discovered in the discovery). Agent Chalmers took possession of a Hard Drive containing the Return on January 31, 2018 and provided a copy to the Computer Forensics Division ("CFD") of DOS-OIG for processing into a readable format. *See* ECF No. 214, Ex. 3. Agent Chalmers gained access to the full Return on February 26, 2018[1] and immediately began reviewing the emails the following day. *Id.*, Ex. 4. However, the Prosecution Team claims that Agent Chalmers only realized in mid-March 2018 "that some measures were necessary to filter out potentially privileged information from the Yahoo Search Warrant production." ECF No. 214 at 7. Rather than contacting a supervisor, contacting the Alabama AUSA assigned to the case, or contacting the CFD, Agent Chalmers took it upon herself to search for the term "Nettles"—the last name of the attorney who handled the subpoena production for Regal.[2] *Id.*, Ex. 4. Agent Chalmers claims that she tagged these emails as "possible taint materials" and only saw the "headings of the emails." *Id.*

---

[1] Agent Chalmers received an initial batch of emails from the CFD on February 8, 2018. *Id.*, Ex. 4. These emails were associated with Defendant Fremie Balbastro. *Id.* However, Agent Chalmers had learned, ***in April 2017***, that Ms. Balbastro requested an attorney, and Agent Chalmers' spreadsheet indicates that she was aware that Ms. Balbastro was represented by Attorney Kirk Truslow. *See* ECF No. 194, Exs. B, E.

[2] The Prosecution Team offers no information about what date Agent Chalmers searched for the term, "Nettles." Nor does it provide a declaration of affidavit explaining why Agent Chalmers searched for a known attorney's name in discovery. *See* S.D. Ga. L. Crim. R. 12.1 (requiring affidavits to support factual assertions).

But Agent Chalmers then waited until March 22, 2018 to raise the issue of privilege with the Alabama AUSA.[3] *Id.*, Ex. 5. Thereafter, on March 28, 2018, she submitted a request to the CFD to remove all emails with a known attorney name in the "To" or "From" field. *Id.*, Ex. 6. However, she omitted Regal's first attorney's name from the list, misspelled the email address of an attorney representing at least three Regal employees, and apparently did not have the CFD search the body or the "CC" field of the emails. *See id*. But, most importantly, neither Agent Chalmers nor the Alabama AUSA assembled a filter team or took ***any other measures*** to identify and remove privileged information. Instead, the CFD performed the minimal step of removing emails associated with an incomplete list of attorney names and released the emails to Agent Chalmers on April 16, 2018.[4] *See id.*

### B.   The Filter Team's Belated and Botched Filter Review

After receiving the emails from the CFD, Agent Chalmers sent a Hard Drive ("the Tainted Hard Drive") to the Department of Justice Human Rights and Special Prosecutions ("HRSP") section, which had taken over the case from the Alabama U.S. Attorney's Office. ECF No. 214 at 10. In June 2020, more than ***two years*** after acquiring ***actual knowledge*** that the Return contained privileged materials, DOJ's HRSP decided to perform a filter review. ECF No. 214 at 12. The Prosecution Team offers ***no explanation*** for its decision to change course and conduct a filter review. However, the Prosecution Team acknowledges sending three memoranda to the Filter

---

[3] Apparently, the Alabama AUSA was out of the office on paternity leave in March 2018; however, Agent Chalmers apparently made no efforts to notify anyone else in her office, the Alabama U.S. Attorney's Office, or the Magistrate Judge's chambers about the privileged materials, and instead waited for the Alabama AUSA's return to work.

[4] The Prosecution Team also notes that Agent Chalmers had trouble accessing the Nuix database in July 2018, and the CFD erroneously gave her access to the unfiltered emails.

Team, which presumably contained some explanation for the belated filter review. Those memoranda have not been provided to the Regal Defendants or the Court.

According to the Filter Team's "Filter Protocol and Review of Filter Process," ECF No. 214, Ex. 1,[5] the Prosecution Team requested a three-stage filter review:

**First**, the Prosecution Team asked the Filter Team to re-run the list of attorneys Agent Chalmers provided the CFD. *See* ECF No. 214, Ex. 1 at 3–5. This list corrected the mistakes in Agent Chalmers' prior list—i.e., the omission of an attorney and misspelling an attorney's email address. The resulting emails were to be placed in "Bucket 1" and withheld from the Prosecution Team. *Id.* at 5.

**Second**, the Prosecution Team asked the Filter Team to search the remaining documents using a list of 22 terms likely to be found in privileged emails. *See* ECF No. 214 at 15 (listing terms). The resulting emails were to be placed in "Bucket 2" and withheld from the Prosecution Team. *Id.*

**Third**, the Prosecution Team asked the Filter Team to spot check the remaining ("Bucket 3") emails for privileged materials. *Id.* at 15.

The Filter Team performed the requested searches at step one and withheld the Bucket 1 emails. ECF No. 214, Ex. 1 at 5. The Filter Team then performed the searches at step two and informed the Prosecution Team that 262,810 documents were returned. ECF No. 214 at 16. The remaining emails were tagged as "Bucket-3." *Id.*, Ex. 1 at 5. The Filter Team conducted a four-month spot check of the Bucket 3 documents and identified and marked privileged documents. *Id.* at 5–6. However, *all* of these privileged materials were then ***produced to the Prosecution Team***. According to the Filter Team's after-action report, a case analyst failed to segregate the privileged

---

[5] This Protocol was drafted on December 15, 2021, not at the time of the filter review.

documents that were identified during the spot check, and a Prosecution Team Paralegal then uploaded the entire unfiltered batch of documents to the Prosecution Team's Relativity database. *Id.* at 6.

This significant error pales in comparison to the Filter Team's failings during the manual review of the Bucket 2 documents. To that end, on February 17, 2021, the Prosecution Team submitted a supplemental memorandum to the Filter Team (which has not been provided to the Regal Defendants or the Court) and asked it to manually review all Bucket 2 files. ECF No. 214 at 16. The Filter Team notified the Prosecution Team that the filter review was concluded in July 2021—*after* the Regal Defendants were indicted—and that all non-privileged emails had been produced to the Prosecution Team. *Id.* at 17. However, that was not true.

The Filter Team assigned an attorney to manually review a significant portion of the Bucket 2 documents. That attorney apparently experienced technical problems that led him/her to ***not actually review*** the assigned documents. *See id.*, Ex. 1 at 7. As a result, this Filter Team attorney missed numerous plainly privileged documents, which are discussed in detail in the Regal Defendants' sealed and *ex parte* filings. However, it would not be fair to lay all the blame on this attorney, as the Filter Team ***again*** released ***all of the unfiltered documents*** in Bucket 2 to the Prosecution Team after finishing its manual review. *See id.* at 7–8. To be clear, just like with Bucket 3, the Filter Team identified and marked privileged documents and then produced the entire unfiltered production to the Prosecution Team. *See id*. at 5–8.

### C. The Case Agents' Review of Privileged Materials and Failure to Alert the Regal Defendants, the Filter Team, or the Court

Unsurprisingly, the Government's belated and botched filter review led to the Prosecution Team accessing privileged documents. The Government contends that the Prosecution Team attorneys did not review any privileged documents and that the Prosecution Team Agents only

viewed the 28 privileged documents. However, the Government offered **no** affidavits or declarations in support of this contention. *See* S.D. Ga. L. Crim. R. 12.1 (requiring affidavits to support factual assertions). Moreover, the Regal Defendants and the Filter Team disagree about how many of the nearly 500 documents are privileged, and the Regal Defendants believe the number of privileged documents viewed is much higher.[6] But even assuming the Filter Team's privilege designations are correct, it is ***undisputed*** that ***every*** Agent on the Prosecution Team viewed privileged documents. The Filter Team's privilege analysis shows that:

- **Special Agent Julie McGuire:** Viewed 23 privileged documents for a total of 51 unique views.

- **Special Agent Peter Yeager:** Viewed 3 privileged documents.

- **Special Agent Shannon Kupersmith:** Viewed 9 privileged documents.

- **Special Agent Daniel Crimmins:** Viewed 2 privileged documents.

- **Special Agent Christopher Hileman:** Viewed 1 privileged document.

- **Special Agent Julia Chalmers:** Viewed at least 1 privileged document.

*See* ECF No. 214, Ex. 1-A, *passim*. Apparently, none of these Agents spoke up. They did not tell a supervisor, the Filter Team, the Court, or the Regal Defendants. Instead, they remained silent.

Moreover, there remain substantial questions about Agent Chalmers' access to the Regal Defendants' privileged materials and whether the Prosecution Team Attorneys accessed any privileged materials. As noted above, the Prosecution Team has had the Tainted Hard Drive, which contained hundreds of privileged documents, since 2018.[7] *See* ECF No. 214 at 10. The Prosecution

---

[6] The Regal Defendants have addressed this issue in their *ex parte* reply to the Filter Team's response.

[7] The only emails removed from this Hard Drive were the emails CFD removed using Agent Chalmers' incomplete list in 2018.

Team **did not** give this Hard Drive to the Filter Team during the July 2020 filter review, and the Prosecution Team possessed it until the Regal Defendants filed their Motion for Discovery, for Return of Seized Attorney-Client Privileged Documents, and for an Evidentiary Hearing ("the Discovery Motion")[8] **in November 2021**.

Importantly, **none** of the issues discussed above came to light until the Regal Defendants filed their Discovery Motion on November 18, 2021. The Filter Team apparently did not recognize any of its numerous mistakes until the Regal Defendants spent significant time and money locating the privileged documents that the Filter Team re-released to the Prosecution Team. And the Prosecution Team, which undisputedly viewed privileged documents, never alerted the Regal Defendants or the Court to their review of privileged materials.

Additionally, the Filter Team has represented to the Court that it "always anticipated that [it] would need to engage with, and provide filtered materials to, the privilege holders after the prosecution was overt in order to determine if Defendants intended to assert a privilege and to satisfy any discovery obligations as to co-defendants." ECF No. 214, Ex. 1 at 10 n.20. However, the prosecution had been "overt" for more than **seven months** when the Regal Defendants filed their Discovery Motion. *Compare* ECF No. 3 (April 8, 2021 Indictment) *with* ECF No. 194 (November 18, 2021 Motion). In its August 19, 2021 letter to Attorney Jim Durham, the Prosecution Team assured the Regal Defendants that "[t]he Filter Team will handle future contact with privilege holders concerning withheld documents." ECF No. 194, Ex. S. Yet, no one from the Filter Team made contact with any of the Regal Defendants to ask whether they asserted privilege over

---

[8] The Discovery Motion has been fully briefed and is pending before the Court. Many issues relevant to the Motion at bar are discussed in the sealed and *ex parte* filings related to the Discovery Motion, and the Regal Defendants respectfully incorporate by reference those filings herein. *See* ECF Nos. 194, 210, 214, 222, 225, 231.

any withheld documents. By all appearances, the Filter Team was not going to contact the Regal Defendants before the original November 15, 2021 motions deadline, if it was going to do so at all.

## II.   LEGAL STANDARD

"As we know, the attorney-client privilege is 'the oldest of the privileges for confidential communications known to the common law.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 172–73 (4th Cir. 2019) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Indeed the Eleventh Circuit recently emphasized, "that the attorney-client and work-product privileges play a vital role in assuring the proper functioning of the criminal justice system and provide a means for a lawyer to prepare her client's case." *In re: Sealed Search Warrant and Application for a Warrant by Telephone or Other Reliable Electronic Means*, 11 F.4th 1235, 1249 (11th Cir. 2021) (quotation omitted). "They are deeply important and must be respected." *Id.*

### A.   Sixth Amendment

The Sixth Amendment ensures that an accused individual enjoys the right "to have the Assistance of Counsel for his defense." *United States v. Morrison*, 449 U.S. 361, 364 (1981) (quoting U.S. Const. amend. VI). "This right, fundamental to our system of justice[,] is meant to assure fairness in the adversary criminal process." *Id.* at 364. Because of the essential nature of this right in any criminal proceeding, courts must be "responsive to proved claims" of government conduct that infringes on the right. *Id.* When a Sixth Amendment violation occurs, the Court must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365.

### B. Fifth Amendment

The Government's intrusion into an individual's attorney-client privilege may also violate the Fifth Amendment. "To constitute a constitutional violation[,] the law enforcement technique must be so outrageous that it is fundamentally unfair and 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987) (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)). "In determining whether such conduct exists, the totality of the circumstances must be considered with no single factor controlling." *Id.* (internal quotation marks omitted). When the misconduct consists of interfering with a defendant's attorney-client relationship, the defendant must show deliberate intrusion causing "actual and substantial prejudice." *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) (internal quotation marks omitted).

In the pre-indictment criminal context, a defendant typically must "demonstrate an issue of fact as to each of the three following elements: (1) the government's objective awareness of an ongoing, personal attorney-client relationship . . . ; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). Moreover, a court may dismiss an indictment under its supervisory powers where the conduct does not amount to a Due Process violation. *United States v. Fernandez*, 388 F.3d 1199, 1239 (9th Cir. 2004). "To justify the exercise of the court's supervisory powers, however, prosecutorial misconduct must (1) be flagrant and (2) cause substantial prejudice to the defendant." *Id.* (internal quotation marks omitted).

### III.   ANALYSIS

As an initial matter, many questions remain unanswered about the Government obtaining, retaining, and reviewing the Regal Defendants' privileged materials. For example, the Prosecution

Team offers no justification, much less a meaningful justification, for its choice to not present filter protocols to the Alabama Magistrate Judge or take any measures to segregate privileged emails prior to accessing the Return. Instead, it summarily contends, "as she was analyzing the investigation, it occurred to Agent Chalmers that Regal was represented by counsel." ECF No. 214 at 7 n.4. But the record clearly demonstrates that Agent Chalmers was well aware that the Regal Defendants were represented by counsel months before she sought the Search Warrant. *See, e.g.*, ECF No. 194, Ex. G. Moreover, the Prosecution Team has not provided any explanation for its decision to seek a filter review three years into this investigation. And, most importantly, significant questions remain about the extent to which Prosecution Team Attorneys and Agents actually reviewed the Regal Defendants' privileged materials. While it is undisputed that ***every*** Agent reviewed privileged materials, the Prosecution Team has offered nothing more than unsworn arguments of counsel—in violation of Local Criminal Rule 12.1—to support its claims that Prosecution Team Attorneys did not review privileged materials.

The Regal Defendants respectfully contend that the parties, and the Court, will be in a better position to evaluate the remedy for the Government's intrusion into the Regal Defendants' attorney-client privilege after an evidentiary hearing. The Regal Defendants propose that the Court hold an evidentiary hearing on the issues raised in the Discovery Motion and then hold a hearing on what remedy is appropriate. *See United States v. DeLuca*, 663 F. App'x 875, 878 (11th Cir. 2016) (stating that, in a similar situation, a district court first held an evidentiary hearing and then held a hearing on a defendant's motion to dismiss). However, out of an abundance of caution and in light of the Court's motions deadline, the Regal Defendants submit this Motion asking for the only remedy that can mitigate the damage the Government has done—dismissal of the Indictment.

### A.  Recent Decisions on Filter Teams

Recently, courts have scrupulously examined the Government's use, failure to use, and misuse of filter teams. The Sixth Circuit, in *In re Grand Jury Subpoenas*, cast doubt upon the wisdom and integrity of the filter team process. 454 F.3d 511, 523 (6th Cir. 2006). There, the Court noted that "taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors." *Id.* "That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations." *Id.* "It is thus logical to suppose that taint teams pose a serious risk to holders of privilege . . . ." *Id.*

The Fourth Circuit has similarly found significant problems with DOJ's use of filter teams. In *In re Search Warrant Issued June 13, 2019*, the Fourth Circuit found that a Magistrate Judge erred by "assigning judicial functions to the Filter Team," "authorizing the Filter Team and its Protocol in *ex parte* proceedings that were conducted prior to the search and seizures," and "failing to properly weigh the foundational principles that protect attorney-client relationships." 942 F.3d 159, 176 (4th Cir. 2019). Within the past eight months, the Fifth and Eleventh Circuits have also issued published decisions addressing the propriety of filter teams and filter protocols in criminal investigations and prosecutions. *See In re: Sealed Search Warrant and Application for a Warrant by Telephone or Other Reliable Electronic Means*, 11 F.4th 1235 (11th Cir. 2021); *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021).

The Eleventh Circuit's opinion is particularly instructive. There, the Government obtained and executed a search warrant at an office building and seized materials from an in-house attorney. *In re Sealed*, 11 F.4th at 1238. The search warrant contained a filter protocol that required any

potentially privileged documents be screened by a filter team. *Id.* at 1240. The owners and managers of the business filed a motion under Federal Rule of Criminal Procedure 41(g) to prohibit the Government from reviewing privileged materials unless the movants' agreed or the court conducted its own review. *Id.* at 1239. A magistrate judge imposed a much stricter "modified filter-team" protocol that allowed the movants to "perform the initial privilege review" and permitted the filter team to challenge any privilege designations. *Id.* at 1243. The district court affirmed the use of this stricter protocol. *Id*. at 1243–44.

The movants appealed, and the Eleventh Circuit first analyzed the issue of whether it had jurisdiction over the appeal. *Id.* The Government claimed that the denial of the movants' Rule 41(g) motion was not an immediately appealable order and argued that suppression would be an adequate remedy. *Id.* at 1246–47. The Court held, "[c]ontrary to the government's suggestion, suppression is not an adequate remedy for any violations" because the Court could not "know whether criminal charges will be brought against the [movants]." *Id.* at 1247. Moreover, the Court held that "suppression protects against only 'the procedural harm arising from the introduction [at a criminal trial] of unlawfully seized evidence.'" *Id.* (quoting *Harbor Healthcare*, 5 F.4th at 601). Importantly, the Court held, "even if [movants] are charged and may seek suppression, *suppression does not redress the government's intrusion into the [movant's] personal and privileged affairs.*" *Id.* (emphasis added).

On the merits, the Court held that the modified filter-team protocol was sufficient to protect the movants' rights. *Id.* at 1249. The Court emphasized the importance of the movants having the ability to review the documents for privilege before the Government, which would ensure that "there is no possibility . . . that privileged documents will mistakenly be provided to the

investigative team." *Id*. at 1250. The Court also favorably noted that the magistrate judge "held an adversarial hearing" and considered the movants' concerns in enacting the modified filter-team protocol.

As detailed below, the Eleventh Circuit's guidance in this case both illustrates the numerous problems with the Search Warrant and the Government's handling of the Regal Defendants' privileged materials and instructs what remedy is appropriate for the Government's failures.

### B. The Prosecution Team and Filter Team's Numerous Failings in Obtaining, Reviewing, and Filtering the Regal Defendants' Privileged Materials Warrants Dismissal of the Indictment.

The cases discussed above differ from the one at bar in one important respect—they all involved searches that individuals were aware of *at the time of the search*. That enabled the individuals' whose privileged materials were at issue to seek judicial intervention to protect their rights. In this case, the Government covertly sought a Search Warrant, which precluded the Regal Defendants from any involvement in the process. The Government could have moved the enforce the subpoena, which would have allowed the Regal Defendants to be heard on the issue.[9] Or it could have been truthful and candid with the Magistrate Judge and requested filter protocols to deal with the inevitable production of privileged communications. But it did none of that, and this Court must now determine what remedy is appropriate for the Government's prolonged and extensive exposure to the Regal Defendants' privileged documents.

The Government claims that the Sixth Amendment does not apply in this case, "[b]ecause the alleged intrusions were limited to attorney-client relationships that predated the initiation of formal charges . . . ." ECF No. 214 at 25. However, as noted above and in the Regal Defendants'

---

[9] The Regal Defendants' sealed and *ex parte* filings explain that the Government agreed to a rolling production of documents from Regal and never expressed any problems with Regal's productions of thousands of employee files.

sealed and *ex parte* filings, the Filter Team released privileged documents from Bucket 2 to the Prosecution Team **after** the Regal Defendants were indicted. *See id.* at 17, Ex. 1. Therefore, there was a governmental intrusion into the Regal Defendants' attorney-client privilege **after** criminal proceedings commenced. The Regal Defendants contend that this is sufficient to implicate the Sixth Amendment; however, even under the Fifth Amendment standard outlined above, dismissal is warranted in this extraordinary case.

In light of the Government's admissions in its responses to the Discovery Motion, it is uncontested that the Government knowingly intruded on the Regal Defendants' privilege. Agent Chalmers had an objective awareness of the Regal Defendants' attorney-client relationships **prior to** seeking the Search Warrant, and DOS-OIG and DOJ both became aware of the presence of privileged material in the Return by March 22, 2018. Yet the Prosecution Team failed to inform the Alabama Magistrate Judge *ex ante* that Regal and its employees were represented by counsel, failed to implement any filter protocols prior to the search, failed to perform a filter review after learning that Attorney Nettles' emails were contained in the Return, and waited more than two years to conduct an wholly disastrous filter review.

Moreover, the Prosecution Team Agents failed to recognize, or speak up about, the Filter Team's failures after actually reviewing privileged materials. The Regal Defendants' sealed and *ex parte* filings detail the extent to which the Prosecution Team Agents accessed their privileged documents. Frankly, in light of the number of times some Agents accessed privileged documents and the substance of those documents, it is simply inconceivable to believe that **no Agents** realized that they were reviewing privileged materials. Importantly, the Regal Defendants still do not know the full extent of the Government's access to their privileged documents. Agent Chalmers had unfettered access to the Search Warrant Return for several weeks, and she admitted knowingly

searching the Return to determine whether there were privileged documents. The only way to properly analyze the extent of the Government's incursion into the Regal Defendants' privilege is to hold an evidentiary hearing. To that end, one of the most troubling aspects of this case is the Prosecution Team's retention of the Tainted Hard Drive until the Regal Defendants filed the Discovery Motion. The Prosecution Team has offered **no evidence** that its Agents or Attorneys didn't access the Tainted Hard Drive. Even after the Regal Defendants pointed out the Prosecution Team's failure to submit affidavits in compliance with Local Criminal Rule 12.1, the Government filed a sur-reply without **any** sworn statements.

Finally, the Government's actions actually and substantially prejudiced the Regal Defendants, as both the Prosecution Team and the Regal Defendants' co-defendants have had access to privileged documents relevant to this case for years. The issue of prejudice is addressed directly in the Regal Defendants' *ex parte* and sealed filings, but the actual prejudice cannot be fully measured at this point given the many remaining factual disputes and questions that need to be resolved. However, as the Prosecution Team notes in its response to the Discovery Motion, the Fifth Amendment Due Process standard only requires the Regal Defendants to "demonstrate an issue of fact" as to the existence of actual and substantial prejudice. *See* ECF No. 214 at 27–28 (quoting *Voigt*, 89 F.3d at 1067). The Regal Defendants have more than carried that burden, and the Court should hold an evidentiary hearing to evaluate the extent of the prejudice. *See Voigt*, 89 F.3d at 1067 ("Although the issue is a close one, after comparing [defendant's] motion and [evidence] with the government's response, we think the district court should have conducted an evidentiary hearing.").

At bottom, the Prosecution Team has had extensive and pervasive access to the Regal Defendants' privileged communications for years. Those privileged communications relate directly to issues central to this prosecution, and **every Agent** has actually reviewed the Regal Defendants'

16

privileged communications. The Government had multiple opportunities to conduct this investigation in a manner that respected the Regal Defendants' attorney-client privilege, and it failed to do so. There is no way to unring that bell, and the Indictment should be dismissed.

Even if the Court ultimately finds no Fifth or Sixth Amendment violation, the Court should nonetheless exercise its supervisory powers to dismiss the Indictment. "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). As noted above and in their sealed and *ex parte* filings, the Regal Defendants have demonstrated that the Government's seizure, retention, and viewing of their privileged materials is demonstrably prejudicial. And the Government's conduct was deliberate—or at a minimum, knowing—and infected the investigation of this case from beginning to end.

Dismissal—under either the Fifth Amendment, Sixth Amendment, or the Court's supervisory powers—would be in accord with the plain language and intent of the Eleventh Circuit's decision in *In re Sealed Search Warrant*. As noted above, the Court held that "suppression does not redress the government's intrusion into the [privilege holders] personal and privileged affairs." 11 F.4th at 1247. Unlike the movants in that case, the Regal Defendants had no opportunity to protect the sanctity of their personal and privileged affairs before the Government reviewed their emails, and simply suppressing the privileged documents that the Government obtained, retained, and reviewed does not remedy the prejudice the Regal Defendants have suffered, nor does it deter future misconduct by the Government.

**C.  Alternatively, the Prosecution Team Should be Disqualified.**

In the event the Court finds that dismissal is not an appropriate remedy after an evidentiary hearing, the Regal Defendants request that the Prosecution Team be disqualified from this case. The Government has admitted that ***every Agent*** viewed the Regal Defendants' privileged materials, and principles of Due Process and fundamental fairness dictate that, at a minimum, the Prosecution Team be disqualified. *See United States v. Horn*, 811 F. Supp. 739, 751 (D.N.H. 1992) (ordering disqualification where "defendants have been and will continue to be prejudiced by the govern-ment's misconduct in improperly copying and reviewing the documents in question because they provided an important insight into defense tactics, strategy, and problems"), *overruled on other grounds by* 29 F.3d 754, 757 (1st Cir. 1994) (describing "unpardonable misconduct committed by a federal prosecutor who should have known better").

Disqualification would be in line with the Government's actions in other case. For example, in a recent case in the Northern District of Ohio, the Government preemptively removed its pros-ecution team after two defendants alerted the Government that the discovery contained privileged documents "[d]espite [the Government's] belief that no member of the original prosecution team viewed any privileged materials . . . ."[10] *United States v. Mox*, 5:21-cr-0406 (N.D. Ohio Dec. 6, 2021), at ECF No. 65 at 5.

**D.  Request to Supplement This Motion After an Evidentiary Hearing**

The Regal Defendants request permission to supplement this Motion after any evidentiary hearing(s).

---

[10] Approximately one month later, the Government dismissed the Indictment. *See Mox*, ECF No. 68.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Indictment in this case or, alternatively, disqualify the Prosecution Team.

Respectfully Submitted,

DATED: February 15, 2021

/s/ Jeffrey J. Buerstatte
Jeffrey J. Buerstatte, P.C.
Email: jjbuerstattelaw@gmail.com
1503 Newcastle St., Suite 2
Brunswick, GA 31520
Tel: (912) 342-8106

William N. Nettles (Admitted *Pro Hac Vice*)
Email:  bill@billnetttleslaw.com
John L. Warren III (Admitted *Pro Hac Vice*)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

**Attorneys for Defendant Sargis Makaryan**

/s/ Brian T. Rafferty
Brian T. Rafferty
Email: brafferty@bakerlaw.com
Brian Fenton McEvoy
Email: bmcevoy@bakerlaw.com
BakerHostetler
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Tel: (404) 256-8233

**Attorneys for Karen Makaryan**

/s/ Charles W. Byrd
Charles W. Byrd
Email: chuckbyrd@pmkm.com
Elizabeth S. White

Email: lizwhite@popemcglamry.com
Pope McGlamry
1200 6th Avenue
Columbia, GA 31902
Tel: 706-324-0050

**Attorney for Regal Hospitality Solutions, LLC**


/s/ James D. Durham
James D. Durham
Email: jdurham@griffindurham.com
Griffin, Durham, Tanner & Clarkson, LLC
7 East Congress Street, Suite 703
Savannah, GA 31401
Tel: 912-867-9140

John Thomas Clarkson
Email: tclarkson@griffindurham.com
Griffin, Durham, Tanner & Clarkson, LLC
75 14th Street, Suite 2130
Atlanta, GA 30309
Tel: 203-240-0208

**Attorneys for Samvel Nikoghosyan**


/s/ Ronald E. Harrison, II
Ronald E. Harrison, II
Email: thf@theharrisonlawfirm.net
The Harrison Firm
1621 Reynolds Street
Brunswick, GA 31520
Tel: 912-264-3035

**Attorney for Artur Grigoryan**


/s/ Edgar Dennis Bueno
Edgar Dennis Bueno
Email: edgar.bueno@nelsonmullins.com
Nelson, Mullins, Riley & Scarborough
201 Seventeenth St., NW, Suite 1700
Atlanta, GA 30363
Tel: 404-322-6451

Kirk Truslow (Admitted *Pro Hac Vice*)
Email: kirk@attorneytruslow.com
T. Kirk Truslow, PA
4209 Mayfair Street
Myrtle Beach, SC 29577
Tel: 843-449-3304

**Attorneys for Fremie Balbastro**


/s/ S. Lester Tate, III
S. Lester Tate, III
Email: lester@akin-tate.com
Akin & Tate
P.O. Box 878
Cartersville, GA 30120
Tel: 770-386-1452

**Attorney for Armen Ayrapetyan**


/s/ Harry D. Dixon, Jr.
Harry D. Dixon, Jr.
Email: ddixon@donniedixonlaw.com
Donnie Dixon, Attorney at Law
7 E. Congress Street, Suite 400
Savannah, GA 31401
Tel: 912-443-4070

**Attorney for Jason Hill**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO. 2:21-cr-00018-LGW-BWC |
| REGAL HOSPITALITY SOLUTIONS, LLC, et al., | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed this Motion with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

This 15th day of February, 2022.

By:     /s/ Jeffrey J. Buerstatte
        Jeffrey J. Buerstatte, P.C.

**Attorney for Defendant Sargis Makaryan**